Jim Park, I'm here on behalf of Karim Al Nasser., who is an illiterate Iraqi refugee who had fled his country to avoid Saddam Hussein. And in 2000, he was granted asylum. He got his dream of getting a ticket, a lottery ticket, only to have his dreams shattered by Saddam Hussein. And so, you've got a finding of fact by the district court based on a hearing. And how do you justify the failure of the court to apply the protections of the Fourth Amendment to Mr. Al Nasser.? Well, you've got a problem, because there was a hearing, and everybody testified. And you've got Officer Courtright saying, I didn't do anything to stop him. And you've got that backed up by Officer Spivey, who says he didn't do anything to stop your client. And all you have is Officer Lopez, who had his back to the whole scene and didn't hear anything until he turned around. And so, you've got a finding of fact by the district court based on a hearing. And how do you overcome that? Well, Judge, I disagree. I think you have to look at the layout of the land. Federal Route 15, very remote area, 9 o'clock at night, between 9 and 10 p.m. Five cars are pulled over, three law enforcement officers, and two other vehicles. I don't see why that's a stop. Let me tell you why. When there are a bunch of police and the cars are stopped, it may be that everybody's getting stopped. It may be that people are pulling over because there's something up ahead, and it may just be there's some interesting wildlife by the side of the road, and they're all stopped to look at it. Police all say, we didn't stop him. And the judge so finds, why isn't that the end of the stop? Judge, I would have to disagree. First of all, what does a reasonable motorist do under that scenario? You slow it down. They always stop in Alaska because there's interesting wildlife. Well, not in that scenario where you have five people. I don't know what the moonlight was, but I don't know if you could see any cows grazing in the open range area. However, what you see is five cars pulled over. And bear. I don't know if you could see bears in Arizona yet. So you have five cars stopped on the side. What's a reasonable motorist should do? And that's what the Office of Court Rights says. We want them to slow down. And the point I use my bright statement. I once did stop, and this is why I'm having so much trouble. There were a bunch of police, and I stopped, and I said, hey, I'm driving home. Why can't I go? And they said, we've got an incident we're dealing with. I understood that and left. They weren't stopping me to inspect me. They had some guy shooting across the road. I think that's a different thing if the police were stopping everybody. But here's what happens. Officer Court Right indicates where he's there. He wants Mr. El Nassar to slow down. Mr. El Nassar moves over. He puts the flashlight in front of his car to let him know, I'm still here. Mr. El Nassar is going by. He's not ready to stop. He pulls over only after Agent Court Right flashes this bright flashlight into his area, and a conversation occurs between Agent Court Right and Agent Spivey. Agent Court Right and Agent Spivey deny ever saying stop, but there's a conversation. They both admit to saying something as they're flashing the light. Never told him to stop. Well, your doors are rolled up. You're driving. You slow down. Hold down your window and ask him. Well, you still have to stop then. Well, now you're stopping and responding. The question isn't whether you misinterpreted something as an indication to stop. It's whether the officers intended and asked him to stop, and they said we had our hands full because we already had enough people stopped. It wasn't our intention to stop the car, and it just stopped, and as it went by we saw these people hiding on the floorboards. The problem is that you've had the hearing. It sounds to me like you're just trying to re-argue the hearing, and a court heard all of this and said there was no intent and there was no stop. Your client did stop, but not because of what the officer said. You have to show us that that's clearly erroneous. You can't discount Officer Lopez, who says he works along with the Border Patrol agents, and he says I heard a stop. You heard the officers make statements. You're asking us to re-weigh the evidence. No, Judge. I'm asking to find that the visiting judge made a clear error in the factual interpretation, and also that the officer, when they pointed the flashlight into that car, that was, regardless of the intent of the officer, whether they were intending to stop the car, that was a reasonable response by a motorist to stop me. What case says a reasonable response of a motorist turns a nonstop into a stop? I can't think of a case right off the bat. I've never read one in 20 years. I don't think you've ever had that situation. But if you were, if a police officer were to turn his headlights on or his. . . It's an unreasonable search and seizure. It's not an activity that results in a misinterpretation by a motorist. And there has to be a seizure, and that's what the court was saying. There wasn't a seizure. Your client might have thought he was being seized, but the ruling was there was no seizure. I would disagree, Judge. I believe that there was a seizure and he stopped in response to that. As soon as the flashing of the inside into the car, after the car was going by, that constituted a stop. That was the officer. The court said it constituted putting a flashlight on somebody. I mean, this is what they do when they've got cars stopped by the side of the road so that they don't get run into by other people. They shine lights. But, Judge, when I was looking at the facts of the case and I was thinking, what would I have done as a reasonable motorist? I would like to think I'm a reasonable motorist. I would stop. But that's not part of the equation under the Fourth Amendment, what would you have done. It's whether there was an unreasonable seizure, not whether you made a mistake in stopping when you didn't have to. Well, when the police officer shone his flashlight into it, that was the, under all the facts of the case, once he shined the flashlight, that was an unreasonable seizure and search into the, because there was no reasonable, if he had a reasonable suspicion and if it was a scenario where, I believe it's Texas versus Brown, where if they're both driving along and he shined into the back area, it's a different story. But he had intentionally created the situation of having more to slow down, whether his intent was to actually look into the vehicle. But the scenario was you had to, the area was designed such a way a reasonable motorist had to slow down. Every time a police officer in the field shines a light at somebody, if the person stops, it's a seizure subject to constitutional review. Not every time. But in most times when you have a police officer pulling people over, they're not also looking at other cars as they're going by to see what they're doing. They're busy doing, taking care of that business right there. Well, that's not right. One officer is almost always assigned to make sure they don't get run into by other passing motorists. Well, in that case scenario, but then was he, if he was going to, he, they were, he shouldn't be saying things, moving his mouth as cars are going by, as you're driving by. The only interpretation, his interpretation is moving his mouth. The cops can't talk to each other while they let the cars by? Because, I mean, you got to think of it. You're going in a remote area. You're slowed down. I mean, what are you going to do? Are you going to, would you just blow them off? I know exactly what I would do because they've done it. I roll down a window and I say, what's going on? And then? You'd be stopped then. Then you'd be stopped. Maybe, maybe not. Well, that's what. These policemen had their hands full. They didn't want to stop more people. Well, that's what they're saying, but at the same time the government asked for remand that they actually did have a reasonable basis to stop, even if they did stop. There might be something going on ahead and they tell me, go by a different route. You can't go through this route. You have a really good argument for a trial court, but you did not have a patent court. Unfortunately, the trial attorney lost the issue in that hearing. And we. Very solid argument. And we wouldn't be here. And we wouldn't be here. And I think it's still a solid argument and a very interesting argument for the court. And we hope that there's actually even a more interesting and novel argument regarding a sentencing issue. But from my client's perspective, it probably doesn't do him any good because he'll probably get deported as a result of this conviction. And hopefully we won't have to address the sentencing issue and that the court can reverse Mr. Al-Nusrai's conviction so that it would prevent him from having to face going back to Iraqi and possibly a death sentence in Iraq again. Wait. Saddam Hussein's gone. Well, he's. I don't think we all. We know Saddam Hussein's not in power, but I think with the events that are going on in Iraq right now, we still know that some of his cohorts are still running the show. We wouldn't have this kind of problem if Saddam Hussein didn't have his hands in what was going on in Iraq at this point. What did Dasser say why he stopped? Judge, it is unclear. Unfortunately, it is unclear why. Is it unclear what he said? I didn't represent him at trial. And it's unclear as to. What does the transcript say? The transcript says he stopped because I believe he thought he had to stop. Then the officers, after he stopped halfway up, if the officer's intent was never to stop and after he stopped about 40 feet up, they could have waved him on. No, instead they run towards the car. My question has to do with his testimony as to why he stopped. And you're saying you don't know. I don't know. It's unclear as to why he actually stopped. What did he say? Was there a reason in the record as to why he stopped? I believe it was made in the arguments. But I'm not sure if he actually testified. So he never said I was stopped or because the officer stopped me with a flashlight? I don't believe he actually articulated it as such clear-cut way. There was a use of an Arabic interpreter. That is a weakness in our case. See, I have a hard time quite understanding. If I was the lawyer appealing this case like you are, that's the first thing I would look for. And what did the defendant do or say at the trial as to why he stopped? And I did look for that, Judge. But this way you have to make If there's no evidence as to why he stopped, then, of course, you're going to lose. I wouldn't say there was no evidence. I believe you can make an inference that he stopped in response to the officer's actions during the – when he testified at the suppression hearing. You can make an inference that he stopped. We don't really do any inferring. I mean, Al Nasser was there. He testified. He had a lawyer. The lawyer was free to ask him why did you stop. The inference I would draw is if the lawyer did not say why did you stop and give Al Nasser a chance to answer, it's because he already knew the answer and it would be harmful to the case. I mean, when I didn't ask a witness a question, that's – I don't think you can draw only a negative inference. It might have been oversight of the trial lawyer. Secondly, Judge, whenever you're making factual findings, you're always making inferences. By assuming that the lawyer is stupid. Well, I'm not saying – actually, I have to say the lawyer did a pretty – the trial lawyer did a very excellent job of defending the case. I believe the government could also cross-examine him and say, hey, did you stop because we pulled you over. Risky. Well, if they really wanted to get to the bottom of the facts and really get to the facts of the case and get to justice, that's a question they could ask. I was struck. The first thing that Al Nasser's lawyer does is he says, I want to ask you about one small aspect of that. He's carefully keeping the door shut instead of opening it. Judge, I – I did not discuss why the trial lawyer took a certain – I'm not asking for inside dope. I'm just asking why should we draw an inference favorable to Al Nasser? Because the evidence isn't there. I think you can draw that inference not just by Mr. Al Nasser's test statements, but also by the actions of the officer chasing the car after he pulls over. If the officer really did intend not to stop them, go on. Would have waved them on, said move on, get out of the highway. No. What did they do? Instead, they go over there, take the keys away. That's a stop. And that shows their intent. Thank you, counsel. May it please the Court, my name is Gary Restaino. I'm an assistant United States attorney for the District of Arizona. Your Honor, as the Court knows, we're looking for the Court to make a determination that the initial interaction was lawful and the sentence was reasonable, and I'd like to address several of the issues raised in the questioning of defense counsel. First of all, as the law enforcement agents were in the scene and as the vehicle approached them, the district judge did not clearly err in his determinations that they did not make any physical force or show of authority. The shining of a light is really no different than the police officers in the Bostic case, one of whom had the zipper pouch, the equivalent of a holstered gun, walking on a narrow bus, asking questions. And the Supreme Court in Bostic held that that was not a show of force or authority that would subject the questioning of the passengers on the bus and make that into a stop. I'm curious about something. As I understand it, Al Nasser never said they told me to stop or I stopped because I thought they were telling me to stop, and no policeman said anything to that effect except Lopez said he heard somebody yelling, stop. I don't recall the district judge saying anything about Lopez in particular, though she found that there was no stop. You're right. The Court is correct that Al Nasser did not ever say that he was stopped in his two chances to testify, either at the suppression hearing or at the trial itself. And Officer Lopez, facing the trial as well, he discussed that trial. He was concerned about the animals that were on the roadway as he was driving up to the site where he eventually picked up the animals. Who has the burden of proof in this case as to whether or not there was a stop? The prosecution or the defense? The government has the burden of proof to show that this was a lawful encounter with Mr. Al Nasser. They had the burden of proof that there was no stop. But there in this case the criminal case doesn't have to prove anything. Well, that is correct, Your Honor. Right? That is correct. All right. So, therefore, the government has to prove beyond a reasonable doubt or by a preponderance of the evidence that there was not a stop. Well, I think at this point it would be by a preponderance of the evidence because it's a pretrial issue. Well, what is the burden of proof, then, that the government has? Is it preponderance of the evidence or beyond a reasonable doubt? It would be by a preponderance of the evidence that this was a reasonable suspicion encounter, which is the alternative argument. Why is the government's burden lesser than in any other criminal case as to findings of fact? It's the equivalent of a suppression hearing for evidence or other Fourth Amendment search and seizure issues. Say that again? It's the equivalent of a suppression issue for other Fourth Amendment search and seizure issues. The burden on the government at that stage is a burden, but is a preponderance of the evidence burden. And the government believes that it was met in this case. You have a case that says that in the criminal case, the government has the only the burden of preponderance of the evidence to prove a fact? I do not, Your Honor. You can't fight that case, can you? There isn't any case. It's all beyond a reasonable doubt. Your Honor, in this case, based on the fact that there's a reasonable doubt in this case, the defendant wins. But in this case, the district judge found the facts and had the opportunity to listen to the evidence of the suppression hearing. The government had the burden, but there was no other story to tell. Beyond a reasonable doubt? I would say, Your Honor, that the district judge found beyond a reasonable doubt, I find. No. The district judge found that there was not a stop based on the facts that were found in the case. He did not address the alternative argument of whether or not there was reasonable suspicion. If I can get back to Judge Kleinfeld's question with respect to Officer Lopez, that was not addressed in the district judge's opinion as to any effect, if at all, that Officer Lopez, facing away, had on the determination. But that doesn't change the fact that there was no alternative story told by a percipient witness. Officer Lopez was facing the other direction. His hearing of a car stopping was really the equivalent of, in Thomas, an officer hearing the thump of marijuana bales and determining that that was reasonable suspicion. It's not a fact with which there was enough evidence to base it on. I would add, in addition, the material witness testimony, not presented to the district judge at the pretrial hearing, but presented at trial, doesn't change the analysis either. What does the district court say in regard to Lopez's statement that the officer said stop? The district judge, having heard the evidence, did not address Officer Lopez's testimony. He didn't hear that evidence? He heard the evidence. It was not addressed in the written opinion. I don't understand. The evidence of Officer Lopez hearing, while his back was turned, something that the Border Patrol agents said, he believes he said. He heard some officers say stop. He believed he heard some officers say stop. Well, there were only officers around. Who else was around? Well, it was his belief that he heard that, rather than a definitive statement. And he said, testified to that, admitted that he was not able to see it, and the district judge, in weighing the facts, that was not a fact that was specifically listed in the written opinion. But again, that was not a percipient witness who was in a position to tell the actions that were taking place on that roadway. That's similar to, again, the material witnesses who did not make anything other than conclusory statements. They were asked questions in their depositions about timing, and specifically about whether or not, how long they'd been in the vehicle. They said they'd been in for 45 to 50 minutes until immigration stopped them. But that's conclusory, and the defendant had the opportunity to ask further questions and did not do that in the video depositions. And in addition, those witnesses were either on the floor in a position similar to hiding, and therefore unable to see what was happening, or they were in a position of looking rigidly ahead and not paying attention. So that takes us, then, to this vehicle stopping on its own, as the district judge found. And another issue raised by the defense is, why did the officers run right away to that vehicle? And Officer Spivey testifies to this, that he ran because there was now a car stopped in the middle of the road, which could create a traffic hazard. So he ran, and in going up to that vehicle, was very quickly able to determine from standard identification questions that, in fact, there was a crime that had taken place due to the alienage of the people in the vehicle. That also is very distinguishable from the circumstances cited in the cases cited by defendants, such as Potser, where there was a gun that was involved in being found, as opposed to simply people who were able to be determined early on that there was no – that they were here unlawfully. I'd like, finally, to address the issue of the reasonableness of this sentence, the reasonable sentence of 15 months. The government believes that the district judge considered all of the facts under 18 U.S.C. 3553, in particular, nearly gave an upward departure based on the underrepresentation of the criminal history, but chose not to do so based on the misdemeanor domestic violence cases. The district judge did not credit the defendant's testimony that it was an unwise, yet generous, picking up of hitchhikers, and the district judge did consider the immigration consequences, speculative as they may be and speculative as they are today. Can you give him an upward adjustment for obstruction of justice for lying? He did not, nor did the government seek an upward adjustment for lying in this case, nor did the probation officer.  I'll get back to him. The judge did find that the defendant's statement about not knowing whether or not people on the side of the road were undocumented was untrue, and the judge felt that it was knowingly part of an organized activity involving financial gain. Based on all these facts, the government contends that this was a reasonable sentence with a correct guideline application. In concluding my points, I'd like to ---- He said El Nasser's account is not worthy of belief. That is correct, Your Honor. And that's why ---- And on whether El Nasser was getting any of the money, the judge thinks he's bound by Blakely beyond a reasonable doubt, so he's saying he's not making a finding that Blakely was going to get money. That's correct, Your Honor. We think that the judge could have made a determination because what the jury determined is distinct from what the judge's role was under the guidelines, and that's because the jury was asked the question, did this defendant have a profit motive? Their answer was no, but that's a separate question with a distinct purpose. The court still had to determine under the guidelines whether or not the offense as a whole involved profit, and acquitted conduct can still provide an enhancement for a sentence. Based on that, the defendant did not meet his burden to show in any way that this was a not-for-profit offense, and as a result, based on the lawful interaction initially with Mr. El Nasser, based on the other evidence and circumstances in the case, and based on his personal circumstances under 18 U.S.C. 3553a, the government contends that the sentence as well was reasonable and should be upheld by this Court. Thank you, counsel. Counsel, you went over your time, but take 30 seconds for rebuttal anyway. Thank you, Your Honor. A couple of things, Your Honor. Judge, Agent Courtright did not say he did not make any gestures. His recollection was he did not recall making any gestures. Secondly, the material witnesses testified at the depositions and during the interview by Agent Courtright that they were stopped. After you were stopped, what did you do? We did this. After we were stopped, we gave statements. After we were stopped, we identified the driver. So it goes again to the intent of the officers. It undermines their intent, saying we didn't stop them. Secondly, it goes back to Judge Kleinfeld's question about case law on the intent, why would somebody just stop? The intent of the officer really probably is not as relevant as the reasonable reaction of the motorist to the law enforcement's action. To give you a hypothetical, two cars are speeding. The officer sees two cars. He decides he's going to pull over the first one because it's going a lot higher at greater speed, turns on his lights. Then the first car just starts to take off. He calls ahead to jump that. But all of a sudden, the car, the second car, which he had no intent to pull over, pulls over. And the officer, you're going to say, I didn't really want to – I wasn't going to pull you over? I mean, again, the reasonableness of the response of the defendant and the driver is a determining factor as to whether there was an unreasonable stop. Thank you, counsel. May I make one comment, Judge? Despite Judge Wake's disbelief of Mr. Al-Nassar, 12 members of the jury must have bought some of his arguments to acquit him on the more serious statutory maximum sentence. Thank you, counsel. Thank you. United States v. Al Nassar is submitted. Last case. Do you want to recess before we go? Okay. We'll take a 10-minute recess before the hearing.
judges: Ferguson, Trott, Kleinfeld